IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 21-CR-0062 |
| Plaintiff, | ) | |
| vs. | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM AND REQUEST |
| STEPHEN ALBERT, | ) | FOR DOWNWARD VARIANCE |
| Defendant. | ) | |

Stephen Albert, through counsel, hereby submits the following sentencing memorandum for the sentencing set at 9:00 a.m. on November 4, 2022.

<u>I. Witnesses</u>

Mr. Albert does not anticipate calling any witnesses at the sentencing hearing.

<u>II. Exhibits</u>

Mr. Albert does not anticipate submitting any exhibits at the sentencing hearing.

<u>III. Issues</u>

There are three issues for the Court to resolve at the sentencing hearing: (1) whether A.A. should be considered a victim; (2) whether Mr. Albert obstructed justice; and (3) Mr. Albert's request for a downward variance.

A.      A.A.'s Status as a Victim.

The government has asserted that Mr. Albert's minor daughter, A.A., should be deemed a victim of relevant conduct under 18 U.S.C. § 3771, and therefore, that Mr. Albert should be ordered to have no contact with her during his term of incarceration and while on supervised release.   PSR ¶¶ 21, 78.   The probation office did not deem her a victim in the presentence

1

report, and Mr. Albert asks the Court to deny the government's request.

According to 18 U.S.C. § 3771(a), a crime victim has certain rights, among them the "right to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). "Crime victim" means "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." *Id*. at (e)(2)(A). "Relevant conduct," for purposes of this case, means, "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant…that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(1)(1)(A).

While discovery materials reflect that Mr. Albert was physically abusive to A.A. at times, and there was some trial testimony reflecting the same, as noted by probation, this abuse did not occur during the offenses of conviction, namely the sexual abuse of L.R. Nor did any physical abuse of A.A. happen in preparation for the sexual abuse of L.R., or to avoid detection/responsibility for the sexual abuse of L.R. Yes, the abuse of A.A. overlapped in time with when Mr. Albert was allegedly sexually abusing L.R., but that does not mean it was relevant conduct to the crimes that Mr. Albert was found guilty of committing. Moreover, there is no evidence that A.A. was a victim of sexual abuse by Mr. Albert. Therefore, A.A. should not be considered a victim.

Concerning a no contact provision as part of supervised release, under 18 U.S.C. § 3583(d), the Court may impose special conditions of supervised release only "if the conditions are reasonably related to the sentencing factors set forth in § 3553(a), involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a), and consistent with any pertinent policy statements issued by the Sentencing Commission." *United*

*States v. Morais*, 670 F.3d 889, 895 (8th Cir. 2012). A condition preventing Mr. Albert from having contact with his biological daughter interferes with his parental rights to a degree that is greater than necessary.

"The relationship between a parent and child is a fundamental liberty interest protected by the due process clause." *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006), citing *Quilloin v. Walcott,* 434 U.S. 246, 255. Therefore, a court should be cautious in imposing a no contact condition between a parent and a child. In this case, a complete prohibition on Mr. Albert contacting A.A. sweeps too broadly. First, A.A. is not a victim of the crimes for which Mr. Albert was convicted. Second, the Court can impose a less restrictive condition requiring Mr. Albert to get permission from the U.S. Probation Office prior to contacting A.A. Third, A.A. is 16 years old. PSR ¶ 50. She will be an adult by the time Mr. Albert is released from prison. For these reasons, the Court should decline to impose the condition requested by the government.

B.      Mr. Albert did not Obstruct Justice.

The probation office applied an enhancement for obstruction of justice. PSR ¶ 30. This is based on two phone calls between Mr. Albert and Josetta Albert. *Id*. ¶¶ 20, 30. Mr. Albert asserts that he should not get such an enhancement.

A defendant commits obstruction of justice when he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction…" USSG § 3C1.1. Unlawfully influencing a witness, or attempting to do so, is an example of obstruction. *Id*. at comment. (n.4(A)).

Mr. Albert does not deny that he participated in the phone calls on November 10, 2021,

3

and February 15, 2022. In the November 10, 2021, call, Josetta was talking about being questioned about the case. Specifically, she was "questioned about how you were taking them to work and stuff." She then mentioned that she recalled Mr. Albert taking the kids to his work. Mr. Albert replied, "All of them. Not just her." The conversation goes on and Josetta says that she's tired of talking about this and that she's tired of being questioned about things. In response, Mr. Albert says, "You've got to remind them when they talk about it. Not her…"

The government is claiming that the "you've got to remind them" statement is Mr. Albert instructing Josetta to coach other witnesses about when they lived on the Settlement. Mr. Albert asserts that the purpose of his statement was simply to have Josetta tell others to tell the truth about when and where they lived. It was not to have her "coach" witnesses about what to say or trying to unlawfully influence anyone. When the statement is taken in context with the previous statements, it does not support an obstruction of justice enhancement.

In the February 15, 2022, call, Mr. Albert and Josetta are talking about her and one of Mr. Albert's sons getting tired of being questioned about the instant case. Mr. Albert tells her that that is what she needs to tell "them." Josetta then talks about how "she" (referring to another female) is not understanding what's going on, and how they had a long talk about it. Josetta going on to say, "I kind of figured something was up because I told her beforehand, when I got subpoenaed for her, I could have gotten in trouble, and you're like, 'No, you don't have to go,' and I'm like, 'What, are you sure?' so it's like two different (unintelligible)." This conversation does not make it clear for what proceeding Josetta was subpoenaed. Due to the vagueness of context, Mr. Albert should not receive an enhancement for obstruction based on the February 15, 2022, phone call.

4

C.     The Court Should Exercise Its Discretion And Vary Downward.

This Court has discretion to sentence Mr. Albert under his advisory sentencing guidelines' range and should exercise that considerable discretion in this case.   18 U.S.C. § 3553(a) provides guidance as to what factors the court shall consider when fashioning an appropriate sentence.   This statute directs that a court should, after considering the nature and circumstances of the offense and the history and characteristics of a defendant, impose a sentence that is "sufficient, but not greater than necessary, to comply with . . . the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Mr. Albert's guidelines range is life in prison.   PSR ¶ 69.   While the offenses of conviction warrant some amount of time in prison, a life sentence is extreme.   A shorter sentence can still satisfy the goals of sentencing.

Mr. Albert is a 50-year-old man who has a very minimal criminal history.   His only convictions not related to the instant offenses are for interference with official acts in 2001, and child endangerment in 2018.   *Id*. ¶¶ 36-37.   He is a Category I offender.   *Id*. ¶¶ 39-41.   He has no prior history of sex offenses, nor were there multiple sex abuse victims.   Importantly, the psychosexual evaluation conducted in his state case showed an overall risk rating of low, with a three-year overall recidivism rate of 11%.   *Id*. ¶ 55.   As he is already age 50, he is less likely to reoffend than younger offenders, and his likelihood of reoffending will go down as he continues to age.   https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-

federal-offenders (summary).   The Sentencing Commission's report found that offenders who were age 65 or older upon release from prison only had a 13.4% rearrest rate.   *Id*.   Of those offenders who fell in Criminal History Category I, such as Mr. Albert, and who were age 60 or older upon release, the rearrest rate was found to be just 11.3%.   *Id*.   Further, federal prisoners were found to have a "substantially lower recidivism rate" than state prisoners.   *Id*.   Mr. Albert's participation in sex offender treatment, both in prison and while on release, will further reduce his chances of committing another offense.   Thus, statistics show that a sentence of a number of years, rather than life, will achieve deterrence and protect the public.

As for his history and characteristics, Mr. Albert has five children with Josetta who will spend the rest of their lives without a father if he is sentenced to life in prison.   PSR ¶ 50. While the government is asking that Mr. Albert not be allowed to have contact with A.A. both while in prison and when he is on supervision (and A.A. may choose this for herself even if the Court does not order no contact), that still leaves four kids who will be fatherless.   Beyond the fact of his children, Mr. Albert's other personal history does not warrant his spending the rest of his life in prison.   He was employed full-time for several years prior to his incarceration, most recently at Midwest Manufacturing.   *Id*. ¶ 62.   He does not have any mental conditions that make him a risk to others, and his substance abuse history is only significant for marijuana.   *Id*. ¶¶ 54-55, 57.

As acknowledged above, Mr. Albert's crimes warrant a prison sentence.   What is not warranted is locking Mr. Albert up and throwing away the key.   According to the Sentencing Commission, the average sentence for defendants convicted of sexual abuse in 2021 was 190 months.   https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Sexual_Abuse_FY21.pdf.   The average sentence for such offenders without a mandatory

minimum was 162 months. *Id*. 48.2% of sexual abuse offenders received a downward variance. *Id*. Consequently, granting Mr. Albert's request for a downward variance will not be at odds with the requirement of avoiding unwarranted sentencing disparities.

For all these reasons, Mr. Albert moves the Court to vary downward to a sentence below his guidelines range.

Respectfully submitted,

FEDERAL DEFENDER'S OFFICE
222 Third Avenue SE, Suite 290
Cedar Rapids, IA   52401-1509
TELEPHONE: (319) 363-9540
TELEFAX: (319) 363-9542

BY: /s/ Jill M. Johnston
JILL M. JOHNSTON
jill_johnston@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE
I hereby certify that on October 28, 2022, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
                    By:    /s/ Angie McClain

7