IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) No. 21-CR-62-CJW |
| vs. | ) |
| STEPHEN ALBERT, | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING BRIEF**

**I.   FACTS**

The court ordered defendant detained pending his trial. (PSR ¶ 2). While in custody, defendant placed multiple telephone calls to his wife, and government witness, Josetta Albert ("Josetta"). (PSR ¶ 20). On November 10, 2021, defendant placed one such call to Josetta. (Exhibit 1). During this call, Josetta told defendant that his lawyer had called her and Josetta was planning on meeting his lawyer at Hardee's with the children. (Exhibit 1, 3:00 – 3:35).

Later, Josetta told defendant that his lawyer was asking a lot of questions about what took place, but that she did not know what happened because she was away in jail. (Exhibit 1, 4:24 – 4:38). Defendant told Josetta, "I can't talk about it." (Exhibit 1, 4:38 – 4:42). Josetta continued to discuss the various locations where they lived, stating that she did not recall anything happening while they lived on the Settlement. (Exhibit 1, 4:42 – 5:08). Defendant confirmed he told his attorney nothing happened at the Settlement. (Exhibit 1, 5:09 – 5:18).

During this same conversation, Josetta told defendant she recalled him taking "them" to work with him on the Settlement. (Exhibit 1, 5:18 – 5:26). Defendant was quick to tell her, "all of them . . . not just her." (Exhibit 1, 5:26 – 5:30). The conversation continued, and defendant told Josetta again that he was not supposed to talk about it. (Exhibit 1, 5:30 – 5:54). Then the following exchange took place:

> Josetta: Yea, I know, I'm just, I'm just tired that I'm, I'm tired of talking about this. And I'm tired about being questioned about things.
>
> Defendant: Well, you gotta remind them that, when they talk about it, well not her, you know, the family.
>
> Josetta: Yea . . .
>
> Defendant: I know the boys know about it. I know who talks about it.

(Exhibit 1, 5:54 – 6:11).

Defendant also referenced his status as a Native American and conveys that he understands he is in federal court because he is a member of a federally recognized tribe. (Exhibit 1, 3:40 – 4:24). He stated, they want to take it federal, so "we'll play federal ball then." (Exhibit 1, 4:16 – 4:24).

On February 15, 2022, defendant spoke with Josetta again. (Exhibit 2). Josetta told defendant that she had a feeling she was going to get served with a subpoena and suggested she was not happy about it. (Exhibit 2, 2:26 – 2:32). Defendant told Josetta that he previously told her she was going to get subpoenaed, "because of her side." (Exhibit 2, 2:32 – 2:40). The conversation continued with Josetta asking, "why does Jill need to talk to the kids for if they are under the age

2

that they can't be put on the stand?"[1] (Exhibit 2, 3:28 – 3:38). Later, Josetta returned from having to meet with Jill, telling defendant that one of their sons did not want to meet with Jill that coming Thursday. (Exhibit 2, 6:52 – 7:13). Josetta and defendant discussed this topic further, with Josetta stating, "I kind of figured something was up because I told you beforehand when I got subpoenaed too for her, and I could have gotten into trouble, and you were like, no, you don't have to go, and I was like, what are you sure?" (Exhibit 2, 8:11 – 8:28). Josetta then said it was like two different cases or bills and then said it was difficult for her because she had to be on her side and defendant's side. (Exhibit 2, 8:28 – 8:54). Josetta was previously served with a subpoena to testify at grand jury. (Exhibit 3).

## II. ANALYSIS

### A. The Court Should Apply USSG §3C1.1 Because Defendant Obstructed Justice[2]

USSG §3C1.1 provides:

If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

USSG §3C1.1. "'A district court must find the predicate facts supporting such an enhancement for obstruction of justice by a preponderance of the evidence.'" *United*

---

[1] As he continues to be, defendant was represented by attorney Jill Johnston at the time of this call. (R. Doc 12).

[2] Resolution of this issue has no impact on the calculation of the advisory guidelines range.

States v. Walker, 688 F.3d 416, 425 (8th Cir. 2012) (quoting *United States v. Alvarado*, 615 F.3d 916, 922 (8th Cir. 2010)).  "The language of §3C1.1 is broad, and as the commentary recognizes, '[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness.'"  *United States v. Wahlstrom*, 588 F.3d 538, 544 (8th Cir. 2009) (quoting USSG §3C1.1, commentary (n.3)).  A nonexhaustive list of the types of conduct to which the adjustment applies is included in the commentary and includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly, or attempting to do so."  USSG §3C1.1 commentary (n. 4(a)).

Defendant's telephone calls with Josetta constitute obstruction of justice.  During the calls, defendant suggests details to Josetta such as nothing happened on the Settlement and that he took all the children to work with him.  He then instructs her that she is responsible for reminding their children about details and tells Josetta he knows who is talking about his case.  During the second call, Josetta references defendant's prior instruction that she did not have to show up when subpoenaed.  All of these acts constitute otherwise unlawfully influencing a witness and trigger application of §3C1.1

Even if defendant did not successfully obstruct justice, he attempted to which is sufficient to trigger application of the enhancement.  "An attempt requires (1) an intent to engage in criminal conduct, and (2) conduct constituting a substantial step toward the commission of the substantive offense which strongly corroborates the actor's criminal intent."  *Wahlstrom*, 588 F.3d at 543.  "A substantial step is one

4

that is 'necessary to the consummation of the crime and . . . of such a nature that a reasonable observer, viewing it in context could conclude that it was undertaken in accordance with a design to commit the substantive offense.'" *United States v. Smith*, 665 F.3d 951, 956 (8th Cir. 2011) (quoting *Wahlstrom*, 588 F.3d at 543).

Defendant also objects to the application of the enhancement because his statements instructing Josetta not to appear for a court proceeding did not relate to the instant offense, but was a proceeding concerning allegations of possible sexual abuse involving A.A. (PSR ¶ 20). First, the context of the conversation does not suggest that this is true. During this call defendant and Josetta were talking about the current federal case. Given this context, when Josetta mentioned the last time she was served it is reasonable to infer that she was referring to her grand jury subpoena. This inference is even more reasonable because it is unclear what state proceeding Josetta would have been subpoenaed for. Defendant pled guilty to both the child endangerment and incest charges. (PSR ¶¶ 37-38). There was no trial in either case and there is no indication that depositions were taken by either party. Consequently, it is unlikely that Josetta was ever served with a subpoena in any state case.

Regardless, the language of the guideline makes clear that the obstructive conduct can relate to the instant offense of conviction, relevant conduct, or even a closely related offense. Assuming that the conduct only related to the state case as defendant claims, those charges were closely related to the instant offense. A.A. was a key trial witness and testified about physical abuse she suffered at the

5

hands of defendant. A state court proceeding regarding defendant's abuse of A.A. is closely related to the instant offense. Moreover, if the state court proceeding is dismissed because Josetta does not appear or fails to bring A.A., that could impact defendant's defense in his federal case.

Given defendant's conduct, application of USSG §3C1.1 is appropriate.

B. *A.A.'s Status as a Victim*

Relying on 18 U.S.C. § 3663(a)(2) (the Mandatory Victim Restitution Act, "MVRA") the PSR concludes that A.A. does not constitute a victim because defendant's abuse of A.A. "did not occur during the commission of the offense of conviction, in preparation for that offense, or to avoid detection or responsibility for the offense of conviction." (PSR ¶ 21). First, this overlooks that defendant's abuse of L.R. and A.A. took place simultaneously over the course of years. Moreover, defendant's abuse of A.A. was done both in preparation of his abuse of L.R. as well as to avoid detection and responsibility for the offense of conviction. The government's trial theory was defendant's ongoing sexual abuse of L.R. was done by threat and fear of assault because of the wide ranging and frequent physical abuse defendant inflicted on all members of the family, including A.A. Thus, when defendant physically abused A.A., he was fostering the environment where L.R. had to submit to his sexual abuse or fear that he would inflict physical abuse upon her.

Second, the MVRA, allows the Court to order restitution in certain cases. However, A.A. is not seeking restitution. Rather, the government believes she should be identified as a victim in order to allow her to exercise her rights under the Crime Victims' Rights Act (CRVA) found at 18 U.S.C. § 3771. The CRVA defines a

victim as, "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2). Under the CRVA, a victim has the right "to be reasonably protected from the accused" and "to be reasonable heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a). *See United States v. Ortiz*, 636 F.3d 389, 393 (8th Cir. 2011) (analyzing under the CRVA's definition whether merchants were crime victims and allowed to be heard at sentencing).

A.A. has been directly and proximately harmed as a result of a Federal offense. Defendant's sexual abuse of L.R., which A.A. witnessed on one occasion, has harmed A.A. Defendant's physical abuse of A.A., which he used as a tool to ensure L.R.'s compliance, has harmed A.A. A.A. constitutes a victim and is entitled to the rights given to her under the CRVA. This includes the right to speak at sentencing and to have the Court order a special condition prohibiting defendant from having contact with A.A.

But even if A.A. does not meeting the statutory definition of "victim," the Court should nonetheless impose a special condition of release prohibiting defendant from contacting A.A. The district court has broad discretion to impose special conditions of supervised release, as long as each condition complies with the requirements of 18 U.S.C. § 3583(d). *United States v. Deatherage*, 682 F.3d 755, 758 (8th Cir. 2012). Section 3583(d) requires a special condition to be reasonably related to certain of the 18 U.S.C. § 3553(a) factors. *United States v. Forde*, 664

7

F.3d 1219, 1222 (8th Cir. 2012). Namely "'the nature and circumstances of the offense and the history and characteristics of the defendant,'" and the need "'to afford adequate deterrence to criminal conduct[,] . . . protect the public from further crimes . . . and . . . provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.'" *Id.* (quoting 18 U.S.C. § 3553(a)). A special condition must involve no greater deprivation of liberty than is reasonably necessary for the purposes of sentencing. USSG §5D1.3(b). In imposing a special condition of supervised release, a district court "must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record as to ensure that the special condition satisfies the statutory requirements." *Deatherage*, 682 F.3d at 758.

Here, a no-contact order is appropriate given defendant's past abuse of A.A. The Eighth Circuit has repeatedly upheld no-contact orders requiring defendants to seek permission from a probation officer before contacting their own minor children, even where there is no history or likelihood of abusive conduct. *See United States v. Hobbs*, 710 F.3d 850, 854 (8th Cir. 2013); *United States v. Simons*, 614 F.3d 475, 481-82 (8th Cir. 2010); *United States v. Stults*, 575 F.3d 834, 850-51 (8th Cir. 2009); *United States v. Mark*, 425 F.3d 505, 507-08 (8th Cir. 2005); *Crume*, 422 F.3d at 733-34; *United States v. Vick*, 421 F.3d 794, 795 (8th Cir. 2005) (per curiam). *See also United States v. Jennings*, 930 F.3d 1024, 1027 (8th Cir. 2019) (upholding

a no-contact order where defendant had history of abusive conduct towards adult family members).

In addition to the no-contact order, the government is also requesting the Court recommend to the Bureau of Prisons that defendant not have contact with A.A. or L.R. while in their custody. *United States v. Wilson*, 709 F.3d 1238 (8th Cir. 2013).

## III. CONCLUSION

The PSR properly calculates defendant's guideline range. Imposition of a special condition prohibiting defendant from contacting A.A. is appropriate given defendant's history of abuse. In light of the § 3553(a) factors, the Court should impose a sentence of life imprisonment.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

By: */s/ Lisa C. Williams*
    */s/ Emily K. Nydle*

LISA C. WILLIAMS
EMILY K. NYDLE
Assistant United States Attorneys
111 7th Street SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333
(319) 363-1990 - Fax
Lisa.Williams@usdoj.gov
Emily.Nydle@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: */s/ RAL*